## HARRIS v. PANHANDLE & S. F. RY. CO.
No. 4187.

Court of Civil Appeals of Texas. El Paso.
April 9, 1942.

Rehearing Denied April 30, 1942.

Writ of Error Denied by Supreme Court
May 27, 1942.

Fowler Roberts, of Austin, and Wilson & Durham, of San Angelo, for appellant.

Terry, Cavin & Mills, of Galveston, and Collins, Jackson & Snodgrass, of San Angelo, for appellee.

JOSEPH McGILL, Special Commissioner.

This is an appeal from a judgment of the District Court of Reagan County, Eighty-Third Judicial District. Appellant, C. A. Harris, as plaintiff, sued appellee, Panhandle & Santa Fe Railway Company, as defendant, for the value of a warehouse building and certain personal property which had been located therein consisting of oil well tools, equipment and supplies, two stoves and an office desk. The building was located on University of Texas lands near defendant's right-of-way at the station of Best, in Reagan County, Texas, upon which defendant claimed to have a lease. On January 23, 1930, defendant had subleased the site on which the warehouse stood to the Parkersburg Rig & Reel Company, and on September 15, 1930, this sublease contract had been assigned by the Parkersburg Rig & Reel Company to plaintiff. Plaintiff claimed that he owned the warehouse building which was worth $500, and that defendant tore it down and removed it, and took, or permitted others to take, the personal property therein which belonged to plaintiff. He sued for $5,625, the value of the building and personal property. Defendant admitted that it did remove the warehouse and take it over, and justified such action under the provisions of its lease with plaintiff, which, under certain conditions, gave the lessor the right to remove improvements placed on the property by the lessee at the cost of the lessee, or to take and hold them as the sole property of the lessor. It claimed that it stored the personal property that was in the warehouse in order to preserve it, and had never denied plaintiff's right to said property or asserted ownership or rights therein. The court submitted issue as to whether or not there was a conversion of plaintiff's property by the defendant, and, upon the jury's answer in the negative, judgment was rendered for the defendant.

The parties will be designated as in the trial court.

Plaintiff earnestly insists that since the lease contract under which defendant sought to justify its action in removing the warehouse did not contain any provision authorizing the taking of plaintiff's personal property, such taking was a conversion as a matter of law, and issue on this question should not have been submitted to the jury; and that since the evidence was uncontroverted that the value of certain personal property which defendant admitted taking was $675.65, judgment for this sum should have been rendered in his favor. He also complains of the court's re-

fusal to submit issue as to the value of additional personal property, if any, taken by defendant, beyond the amount that the defendant admitted that it took; and he further contends that the contract with the University of Texas, under which defendant claimed a lease of the site on which the warehouse was located, expired on June 30, 1930, and that, therefore, defendant was a naked trespasser at the time it removed the warehouse, and that the uncontradicted evidence showed the warehouse was worth $500, and he was, therefore, entitled to judgment for the further sum of $500.

Defendant acquired its interest in the warehouse site under a contract dated July 31, 1924, between the Santa Rita Townsite Company, the Kansas City, Mexico & Orient Railway Company of Texas (to whose rights defendant succeeded), and the Board of Regents of the University of Texas. This contract recited that the Townsite Company was the owner of a lease on Sections 33 and 34, Block 9, State University lands in Reagan County (on a portion of which the warehouse site was located); that these sections were located adjacent to an oil field which was being developed; that the Railroad needed additional lands for sidings and track purposes and for warehouses and material yards, etc., in order to take care of the business growing out of the development of the oil field; that the interest of the Townsite Company to the land in question which adjoined the Railway Company's right-of-way was assigned to the Railway Company to use for trackage, warehouses or other commercial purposes. The contract further recited that the Townsite Company's lease expired June 30, 1930, and provided that in consideration of the benefits to be derived from having the Railway Company construct additional sidetracks and from having warehouses and other commercial plants erected and maintained on the townsite of Best, the Board of Regents assented to the contract and agreed that "if at the expiration of the lease of party of the first part (the Townsite Company) it is still necessary to maintain such additional sidings, warehouses, etc., by party of the second part (the Railway Company), or its assigns, that said lands may be continued to be used so long as said necessity may exist, and so long as said oil field may be developed and said party of the second part, or its assigns, needs said properties for such railroad sidings, warehouse purposes, etc." The contract further recited that it was intended as an easement for the use and benefit of the party of the second part and its assigns, and that in the event the lands were not used as therein mentioned by such parties, party of the second part should have no interest in the property.

The lease under which plaintiff acquired possession of the property contained a stipulation that the demised premises should be used exclusively as a site for warehouse and supply yard.

 From the foregoing it appears that defendant's interest in the warehouse site was an easement granted for a specific purpose, i.e., to use for trackage, warehouses or other commercial purposes. It was to continue so long as necessity therefor existed by reason of the development of the oil field and so long as such use was made of the site by the Kansas City, Mexico & Orient Railway Company, or its assigns. Up to the time that defendant tore down the warehouse no other use had been made of the site than that specified in the grant. The use had been by the grantee or its assigns, including plaintiff. No evidence was offered by plaintiff showing that necessity for such use no longer existed. We think in this state of the record the court was warranted in concluding that no abandonment of its easement by defendant was shown.

The sublease agreement of January 23, 1930, under which plaintiff acquired possession of the warehouse and site on which it was located, contained the following clause: "11. That if any rent hereunder shall be due and unpaid, or if default shall be made in any of the covenants of the Lessee herein contained, then it shall be lawful for the Lessor to re-enter the demised premises and to remove all persons therefrom." It also provided that the lease might be terminated by either party upon thirty days' notice in writing, which should state the date that such termination should take place. Another clause provided that upon termination of the lease the lessee, upon demand of the lessor, should deliver up the possession of the premises and remove all improvements placed thereon by the lessee, and that upon the lessee's failure to do so within thirty days after termination of the lease, the lessor might

remove said improvements at the cost of the lessee, or might take and hold the improvements as its sole property.

The stipulated rental was a sum which should represent interest at the rate of six per cent per annum on the fair value of the demised premises, which was fixed at $400 at the time of the contract, and the initial rental was fixed at $24 per annum. This was subject to revision at least once every five years, depending on the value of the property.

Both parties assume that under the terms of the lease, upon its termination, plaintiff had the right to remove the warehouse within thirty days. The only evidence as to the time when the warehouse was built was the testimony of plaintiff's son, David Harris. He said it was built "along about 1927." Plaintiff testified that he bought it from the Parkersburg Rig & Reel Company. Parkersburg Rig & Reel Company did not acquire the premises until January 23, 1930. As far as the record discloses, until that date interest in the warehouse site was owned by defendant, or its predecessor, the Kansas City, Mexico & Orient Railway Company, under the contract of July 31, 1924.

In this state of the record, it is questionable whether plaintiff showed that he ever owned the warehouse. Under the terms of his lease he had the right to remove from the leased premises only such improvements as were "placed thereon by the lessee." However, we will assume, as the parties did, that he did own the warehouse and had the right to remove it under the terms of his lease within thirty days after the termination thereof.

The evidence was ample to show that, more than three years' rental being past due, the defendant, after futile efforts to collect it, on December 19, 1938, notified plaintiff that it was terminating the lease as of January 16, 1939, and that plaintiff accepted the cancellation of the lease as of this date; further, that after such termination defendant, without avail, repeatedly demanded that plaintiff remove his warehouse, and finally on January 30, 1940, it elected to take over the warehouse as provided in the lease.

■ It, therefore, appears that at the time defendant tore down the warehouse it had become the property of defendant under the terms of the lease; also that because of the clause above quoted and the termination of the lease, defendant had the right to re-enter the leased premises. Under said clause it also had the right to remove all persons therefrom. This necessarily included the right to remove all personal property therefrom. Backus v. West et ux., 104 Or. 129, 205 P. 533.

Whether the landlord upon accrual of the right of re-entry may forcibly eject a tenant is said not to have been adjudicated in Texas. Bagby v. Hodge, Tex.Civ.App., 297 S.W. 882; 27 Tex.Jur. p. 320, sec. 187.

The holdings in Chrone v. Gonzales, Tex.Civ.App., 215 S.W. 368, and McAllister v. Sanders et al., Tex.Civ.App., 41 S.W. 388, seem to deny such right. In other jurisdictions the authorities differ. They are collected in exhaustive annotations in 8 L.R.A.,N.S., 426, 11 L.R.A.,N.S., 468, and 45 A.L.R. 313. Some jurisdictions which deny the right to re-enter by force recognize it where the entry is peaceable. See Annotation, 45 A.L.R. 317.

■ We are not called upon to decide this question. Even though the re-entry may have been unlawful, it did not, ipso facto, constitute a conversion of plaintiff's personal property. Lee Tung v. Burkhart, 59 Or. 194, 116 P. 1066. This is especially so in view of the above quoted clause of the lease. In the absence of such clause, the Supreme Court of Kansas, on a state of facts very similar to those here, held that although the re-entry was unlawful, no conversion was shown. Whitney v. Brown, 75 Kan. 678, 90 P. 277; 11 L.R.A.,N.S., 468, 12 Ann.Cas. 768.

■■ Whether or not there was a conversion, was a question of fact, which was properly submitted to the jury. We think the evidence was sufficient to sustain their finding.

The judgment is affirmed.

PER CURIAM.

This opinion directed to be written and is adopted by the Court.